UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES U. PAYNE,

    Plaintiff,

v.                                                                          Case No. 11-cv-14023
                                                                    Paul D. Borman
CHRISTOPHER R. BOULTER,                           United States District Judge
BLACKMAN CHARTER TOWNSHIP,
a Michigan Municipal Corporation,

    Defendants.
_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. No. 17)**

**I. INTRODUCTION**

    This civil rights case arises from circumstances surrounding Plaintiff's serious single car crash. The original complaint was filed *pro per* on May 16, 2011 in Jackson County Circuit Court. On September 14, 2011, this case was removed by Defendants to this Court. (Dkt. No. 1). On April 4, 2012, after Plaintiff obtained counsel, the parties stipulated that Plaintiff file an Amended Complaint. (Dkt. No. 8). Defendants filed an answer to the Amended Complaint on May 20, 2013. (Dkt. No. 11).

    The Amended Complaint contained the following claims: I) 42 U.S.C. § 1983, Fourth Amendment, Unlawful search - vehicle; II) 42 U.S.C. § 1983, Fourth Amendment, Unlawful search - residence; III) 42 U.S.C. § 1983 Fourth Amendment, Unlawful search - residence (re-entry of the house); IV) 42 U.S.C. § 1983, Fourteenth Amendment - Due Process - False Statements; V) 42 U.S.C. § 1983, Fourteenth Amendment - Due Process - Abuse of Process; VI) 42 U.S.C. § 1983, Failure of Blackman Township to Train/Supervise; VII) State law claim -

Abuse of Process; and VIII) Exemplary Damages.

Now before the Court is Defendants Officer Christopher Boulter ("Defendant Boulter") and Blackman Charter Township's Motion for Summary Judgment filed on January 30, 2013. (Dkt. No. 17). Plaintiff responded on March 16, 2013. (Dkt. No. 19). Defendants then filed a reply. (Dkt. No. 20). Oral arguments on this matter was held on October 23, 2013.

For the reasons stated below, the Court GRANTS Defendants' Motion.

## II.  BACKGROUND

On June 11, 2008, at approximately 4:30 P.M., Plaintiff was in a serious single car accident in Blackman Township, Michigan. (Def.'s Br. Ex. 2, Payne Dep. at 72-73; Def.'s Br. Ex. 1, Police Report at 1-2). Plaintiff was leaving his business and on his way to purchase car insurance when he had a seizure. (Payne Dep. at 73). Plaintiff lost control of his car and struck a tree. (Police Report at 1-2; Payne Dep. at 73). Plaintiff was trapped in his vehicle by his legs and feet, and his injuries were severe. (Police Report at 2; Def.'s Br. Ex. 3, Ambulance Chart, "Pt has a near amputation"). Plaintiff has no memory of the accident, testifying that his first memory is of the life-flight helicopter landing at the hospital. (Payne Dep. at 16, 73).

The first officer to arrive on the scene of Plaintiff's accident was Public Safety Officer Scott Grajewski. (Def.'s Br. Ex. 4, Grajewski Dep. at 8). Eventually, Sergeant Spink and Deputy Director Jon Johnston and two paramedics with Jackson County Ambulance also arrived at the scene. (Police Report at 2; Grajewski Dep. at 14, 18).

Officer Grajewski testified that he entered Plaintiff's vehicle and stabilized his spine. (Grajewski Dep. 10-12). As Plaintiff began to "thrash about," Officer Grajewski explained to Plaintiff that he was injured and the need for him to be stabilized. (*Id*. at 11). While still in the

car, Plaintiff began try to reach into his right front pocket. (*Id*. at 15-16). Officer Grajewski told Plaintiff not to worry about what was in his pocket because his extraction from the vehicle was the most critical issue. (Police Report at 2). At some point Officer Grajewski, on behalf of the paramedics, asked Plaintiff if he had taken any medication or any narcotics. (Police Report at 2). Plaintiff responded that he had taken cocaine the day before. (Police Report at 2; Grajewski Dep. 14-16). Director Johnston learned of Plaintiff's admitted drug use from Officer Grajewski and also remembers that the paramedics were discussing the issue. (Def.'s Br. Ex. 5, Johnston Dep. at 12).

The extraction of Plaintiff from his vehicle was very complex and took somewhere between 15 and 35 minutes. (Johnston Dep. at 10). After Plaintiff was extricated from the vehicle and placed on a stretcher, Officer Grajewski testified that he searched Plaintiff's right front pocket because Plaintiff had stated he had cocaine in his pocket. (Police Report at 2; Grajewski Dep. at 18). Officer Grajewski found and removed "a large sum of money that was wadded and wrapped with a rubber band" from Plaintiff's right front pocket. (Grajewski Dep. at 18). The money, which totaled $2,275.00, was immediately handed over to Director Johnston for "integrity purposes" and safe-keeping.[1] (Johnston Dep. at 20, 21:24, 22; Grajewski Dep. at 18-19, Police Report at 2, 4).

Plaintiff was transported (by ambulance and then helicopter) to the hospital for treatment. (Police Report at 2-3). Defendant Boulter was assigned to the case for follow-up. (Police

---

[1] Plaintiff and Defendant Blackman Township subsequently entered into a "Settlement and Mutual Release Agreement" to resolve a forfeiture action against Plaintiff over the seized $2,275.00. The Township returned $500.00 to Plaintiff. (Def.'s Br. Ex. 14, Settlement Agreement).

Report at 3; Def.'s Br. Ex. 6, Boulter Dep. at 28). Director Johnston informed Defendant over the phone that Plaintiff "had used cocaine and marijuana" and "a large quantity of money" was found on his person. (Johnston Dep. at 18:15-20; Boulter Dep. at 28, 34, 36). Because there was an indication that cocaine had been used in or around the vehicle, Defendant Boulter requested Public Safety Officer Jacobson and his K-9 Xando conduct a vehicle search.[2] (Police Report at 3; Def.'s Br. Ex. 8, Jacobson Aff. ¶ 5).

K-9 Xando alerted to the presence of drugs when he passed the driver side door of Plaintiff's vehicle. (Jacobson Aff. ¶ 6; Police Report at 3). Based on this alert, Officer Jacobson searched the interior of Plaintiff's vehicle and found cocaine in the floorboard near the driver's side door. (Jacobson Aff. ¶ 6; Police Report at 3). Defendant Boulter was not present when the K-9 Xando alerted to the presence of drugs or when Officer Jacobson discovered cocaine in the vehicle. (Boulter Dep. at 37-38, 49-50; Jacobson Aff. ¶¶ 7-8). Upon Defendant Boulter's arrival at the building where Plaintiff's vehicle was being held, Officer Jacobson advised him that K-9 Xando alerted to the presence of drugs, and that cocaine was discovered in the vehicle. (Jacobson Aff. ¶ 8). Defendant Boulter field tested the substance found in the vehicle and it tested positive for cocaine. (*Id.* ¶¶ 6, 8; Boulter Dep. at 38). At some point, K-9 Xando also alerted to the presence of drugs on the money recovered from Plaintiff's right front pocket. (Def.'s Br. Ex. 7, Affidavit for Search Warrant ("Affidavit") ¶ 7; Jacobson Aff. ¶ 9).

Defendant Boulter believed "that there was probable cause [] that additional drugs would be located at the residence of" Plaintiff due to cocaine being located in the vehicle, and that

---

[2] Officer Jacobson swore in an affidavit that K-9 Xando is trained to search for narcotics. (Jacobson Aff. ¶ 4).

Plaintiff appeared to be traveling from his residence. (Police Report at 3). Additionally, Defendant Boulter had been advised by Officer Jacobson that he had received tips that Plaintiff had been selling narcotics from his business and home and K-9 Xando had alerted to the presence of drugs on the money found on Plaintiff's person. (Boulter Dep. at 43-44; Affidavit ¶¶ 9, 12). Defendant Boulter then requested another officer go to Plaintiff's residence to determine whether anyone was home and get a legal description of the home. (Police Report at 3; Boulter Dep. at 51). This officer indicated that he was unable to make contact with anyone. (Police Report at 3). Defendant Boulter then drafted an affidavit seeking a search warrant for Plaintiff's residence. (Police Report at 3; Boulter Dep. at 38). The completed affidavit was sent and signed by Judge Filip of the 12th District Court, Jackson County, Michigan on June 11, 2008 at 10:12 pm. (Affidavit at page 4, 6; Police Report at 3).

Plaintiff's residence was then searched; no drugs were found. (Def.'s Br. Ex. 9, Property Report Sheets; Boulter Dep. at 62). However, the police did seize a large amount of used packaging material, an empty box for a digital scale and a marijuana pipe. (Police Report at 4; Property Report Sheets; Boulter Dep. at 51-53). A copy of the return and tabulation and search warrant were left on Plaintiff's dining room table. (Police Report at 4).

Plaintiff was eventually charged with possession of a controlled substance less than 25 grams in violation of Michigan Comp. Laws § 333.7403(2)(a)(v). (*See* Def.'s Br. Ex. 10, Felony Complaint). Plaintiff later pleaded guilty to a misdemeanor charge of operating a vehicle with the presence of a controlled substance in violation of Michigan Comp. Laws § 257.625(8). (*See*

Def.'s Br. Ex. 11, Judgment of Sentence).[3]

### III. LEGAL STANDARD

Defendants have moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. This rule provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986). Once this burden is met, the opposing party must produce some facts showing there is a genuine issue for trial. *Id*. If a rational trier of fact could not, based on the record as a whole, find in favor of the party opposing summary judgment, then summary judgment is granted in favor of the moving party. *Id*. The Court must view the facts and draw all reasonable inferences in favor of the non-moving party. The Court does not determine if all of the evidence favors one side or the other, but "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

---

[3] Plaintiff's Complaint is based in part on the fact that "Defendant Boulter was subsequently found to have committed perjury while testifying in a drug case in December 2009 unrelated to Plaintiff's case. In January 2010, the Jackson County prosecutor's office began giving a statement pursuant to *Brady v. Maryland* to all defense attorneys involved in cases where Defendant Boulter was a witness." (Am. Compl. ¶¶ 18-19; *See* Def.'s Br. Ex. 12, *Brady v. Maryland* disclosure, stating "In an effort to protect the life and safety of an informant (to whom he had promised anonymity) ... Detective Sergeant Christopher Boulter gave a misleading answer to the question of whether he had such an informant."). However, this argument is not pursued by Plaintiff - most likely because it is clear that Defendant Boulter was brought on to this case after the accident, and was not present for the vehicle search. Further, it appears that Defendant Boulter was never convicted of perjury. (*See* Boulter Dep. at 15-17).

## IV.  ANALYSIS

Plaintiff has conceded all but two of his claims in his response to the Motion for Summary Judgment, noting that only Claim II, the Fourth Amendment violation based on the first search of his residence and Claim VIII, Exemplary Damages should go forward.  (Plf.'s Resp. at 1-2).  Accordingly, the Court will only address these claims.

Plaintiff argues that genuine issues of material fact exist as to whether the search of Plaintiff's residence was based on a valid search warrant because Defendant Boulter knew the information he used in the affidavit was unlawfully obtained and he was "obligated to either not use this unlawfully obtained information or disclose the unlawful manner in which the information was obtained to the reviewing magistrate." (Plf.'s Resp. at vii).  Plaintiff appears to argue that Defendant Boulter knew: (1) Plaintiff's statements concerning cocaine use were disclosed in violation of HIPAA; (2) the money in Plaintiff's pocket was obtained as a result of an unlawful warrantless search by Officer Grajewski; (3) cocaine in Plaintiff's vehicle was obtained as a result of an unlawful warrantless search of Plaintiff's vehicle by Officer Jacobson. Plaintiff argues that because Defendant Boulter knew this information in the affidavit was "unlawfully' obtained, reliance on it by law-enforcement officers was "objectively unreasonable." (Plf.'s Resp. at 15).

**1.      HIPAA Violation**

Plaintiff contends that Officer Grajewski's disclosure of Plaintiff's statements to Defendant Boulter at the scene of the accident regarding his drug use violated the privacy disclosures of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d-1 to d-7.

The privacy provisions set forth in HIPAA were designed to impose a "wall of confidentially between an employee's health care decisions (and the [health care] plan's financial support for those decisions) and the employer." *Grote v. Sebelius*, 708 F.3d 850, 858 (7th Cir. 2013) (citations omitted). As the Ninth Circuit has explained, "HIPAA aims "to improve the ... efficiency and effectiveness of the health information system through the establishment of standards and requirements for the electronic transmission of certain health information." *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1083 (9th Cir. 2007) (citation omitted). Through HIPAA, Congress intended to "recogniz[e] the importance of protecting the privacy of health information in the midst of the rapid evolution of health information systems." *Id*. at 1084 (quoting *S.C. Med. Ass'n v. Thompson*, 327 F.3d 346, 348 (4th Cir. 2003)). Courts have consistently held that HIPAA does *not* create a private cause of action for the disclosure of confidential medical information. *See Id*. at 1082 (citing 65 Fed.Reg. 82601 (Dec. 28, 2000), "Under HIPAA, individuals do not have a right to court action."); *see also Dodd v. Johns*, 623 F.3d 563, 569 (8th Cir. 2010) ("HIPAA does not create a private right of action"); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n. 4 (10th Cir. 2010) (same); *Acara v. Banks*, 470 F.3d 569 F.3d 569, 572 (5th Cir. 2006) (same); *Purcell v. Fadlallah*, Slip Copy, No. 10-13444, 2013 WL 3771347, *9 (E.D. Mich. Jul. 17, 2013). Rather, the Secretary of Health and Human Services is tasked with enforcing the statutory penalties. *See L.S.D. v. Genesse Cnt'y Comm. Mental Health*, No. 05-71844, 2006 WL 2347612, *8 (E.D. Mich. Aug. 11, 2006) (citing 42 U.S.C. § 1350d-5).

In the instant case, Plaintiff goes to great efforts to argue that Officer Grajewski should be classified as a "healthcare provider" under HIPAA and that Plaintiff's statements regarding

his drug use should be classified as "protected health information" and thus the information was not disclosed pursuant to an exception of HIPAA. Plaintiff, however, fails to set forth *any* case law to support these arguments. Further, Plaintiff fails to set forth a coherent reason about how or why this bears on the validity of a warrant. Finally, Plaintiff cannot show that Defendant Boulter knew that this information was unlawfully obtained.

Given the dearth of federal case law regarding HIPAA in anything resembling this factual scenario, the Court relies upon *United States v. Mathis*, 377 F. Supp. 2d 640 (M.D. Tenn. 2005). In *Mathis*, the district court addressed a similar issue where the defendant filed a motion to suppress based in part on the theory that the information included in the affidavit supporting a search warrant was obtained in violation of HIPAA. *Id*. at 645. The court rejected this argument finding that the FBI was not a "health plan," "a health clearing house," or "health care provider who transmits any health information in an electronic form in connection with a transaction referred to in Section 1320d-2(a)(1) of this title" and therefore did not fall under the HIPAA definition of a "covered entity." *Id*. (relying upon *Beard v. City of Chicago*, No. 03-C-3527, 2005 WL 66074, at *2 (N.D. Ill. Jan. 10, 2005) (holding city fire department is not a "covered entity" under HIPAA despite employing doctors for the purpose of evaluating medical conditions.)).

Here, as in *Mathis*, the Court finds that the Blackman County Public Safety does not fall within the definition of "covered entity" under HIPAA where it does not appear that in 2008 they were a "health plan," a "health clearing house" and they also were not in the practice of electronically transmitting any health information. (*See* Johnston Dep. at 35-36, stating in response to the question of whether officers recorded medical information gathered, "there's no

permanent record other than we responded.").

Further, even assuming that the Blackman County Public Safety was a covered entity, the pertinent information does not fall within HIPAA's definition of protected health information. HIPAA defines "health information" as any information oral or recorded that,

>    (A) is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and
>
>    (B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

42 U.S.C. § 1320d-4. Plaintiff broadly states that "the record evidence in this case clearly establishes that all the information learned by Officer Grajewski and Deputy Director Johnston is considered protected health information." (Plf.'s Resp. at 8). However, Officer Grajewski testified that Plaintiff stated that he had cocaine in his pocket. (Grajewski Dep. at 18). While it might be arguable that Plaintiff's statements about drug use could bear on his "past, present, or future physical or mental health", the same cannot be said about a statement regarding the *location* of drugs on his person. This statement resulted in the discovery of the large stash of money in Plaintiff's pocket, on which K-9 Xando later alerted to the presence of drugs (examined *infra*).

Finally, even assuming that a HIPAA violation did occur, not only has Plaintiff failed to coherently explain or cite any case law from any jurisdiction where police officers or public safety officers are found to fall under HIPAA, but Plaintiff has also failed to cite any authority for the proposition that such a violation could somehow lead to an invalid warrant or a constitutional violation. Finally, and significantly, Plaintiff did not allege a HIPAA violation or

this theory in his Amended Complaint.[4]

For all of these many reasons, the Court finds that there was no violation of HIPAA or even if there was such a violation, it had no bearing on the validity of the warrant.

**2.    Currency and Cocaine**

Plaintiff also argues that the affidavit was invalid because the currency in Plaintiff's pocket and the cocaine in Plaintiff's vehicle were discovered in violation of the Fourth Amendment. The Court finds these arguments to be without merit.

A. Currency

Although not entirely clear from the briefing, Plaintiff makes a half-hearted attempt to argue that Officer Grajewski unlawfully searched Plaintiff's pocket and unlawfully seized the money found there. Plaintiff states that "Officer Grajewski admitted that he did not have a warrant or court order and that he did not have consent to search Plaintiff or seize his money." (Plf.'s Resp. at 11).

"The Fourth Amendment guarantees the right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United States v. Richardson*, 40 Fed. Appx. 7, 11 (6th Cir. 2002) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996) and U.S. Const. amend. IV). "Absent valid consent, the government must establish that [a] warrantless seizure was justified by probable cause. Recognizing that a greater expectation of privacy exists in property carried on one's person, this Court has stressed that probable cause is required to justify the seizure of such items." *United States v. Baro*, 15 F.3d

---

[4] Indeed, Plaintiff's legal theory as set forth in his Amended Complaint is that Defendant Boulter "inserted false statements" in the affidavit that he knew "were false when he made them." (Am. Compl. ¶¶ 36-37).

11

563, 567 (6th Cir. 1994) (citation omitted).

In *Baro*, the Sixth Circuit found the government did not have probable cause to seize a man's currency when the only facts they knew were that he was traveling to Miami, he purchased a one-way ticket with cash, he was carrying more than $14,000, he attempted to appear alone despite having a traveling companion, he constantly looked around and he gave an unlikely explanation as to why the source of the money. *Baro*, at 567-68. In the instant case, there is uncontradicted testimony that: (1) Plaintiff *stated he had cocaine* in his pocket, (2) Plaintiff admitted *he used cocaine* the day before and (3) Plaintiff was thrashing about and trying to reach his right pocket. (Grajewski Dep. at 18; Police Report at 2). Unlike *Baro,* where multiple circumstantial factors could not give rise to probable cause to seize currency, in the present case, Officer Grajewski had *direct statements from* Plaintiff that he used drugs and had them on his person. Therefore, there was probable cause for Officer Grajewski to search the pocket Plaintiff was attempting to grab and thereafter to seize the large amount of money found in the pocket Plaintiff identified as containing drugs.

Further, Defendant Boulter learned of Plaintiff's statements regarding his drug use and the seizure of money after the fact from Officer Grajewski. In *Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003) (*en banc*), the Sixth Circuit explained that where officers were relying upon a dispatcher's description over the radio for probable cause to effect a *Terry* stop, the stop was permissible only to the extent that the dispatcher's information was sufficient to find reasonable suspicion for a *Terry* stop. *Id*. at 849, *see also United States v. Hensley*, 469 U.S. 221, 232 (1985). Here, there is nothing in the record that indicates that Officer Grajewski fabricated these statements or that he could not be trusted. Further, as those statements gave rise to probable

cause for Officer Grajewski to search Plaintiff and seize his currency, that probable cause can be imputed to Defendant Boulter who received that information.

B. Cocaine

Plaintiff next argues that his vehicle was searched in violation of the Fourth Amendment. In *United States v. Smith*, 510 F.3d 641 (6th Cir. 2007) the Sixth Circuit succinctly set forth a summary of the automobile exception to the Fourth Amendment.  The *Smith* Court stated:

> Pursuant to the Fourth Amendment a search police officers generally must obtain a warrant before conducting a search. However, the Supreme Court has long recognized an exception to the warrant requirement with respect to search of vehicles.  The Court's initial cases establishing the "automobile exception" were premised on the "ready mobility" of the automobile, which created "an exigency sufficient to excuse failure to obtain a search warrant."  More recent Supreme Court jurisprudence, however, has provided an additional justification for the exception: "Even in cases where an automobile was <u>not immediately mobile</u>, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception.  The Court has emphasized that the exception has no separate exigency requirement.
>
> Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime."  The court's determination of whether probable cause existed at the time of the search is a "commonsense, practical question' to be judged from the 'totality-of-the-circumstances."

*Id*. at 647-48 (internal citations omitted) (emphasis added).  Further, a court must look at the "objective facts known to the officers at the time of the search" not subjective intent.  *Id*. at 648.

In the instant case, Plaintiff argues the search of Plaintiff's vehicle did not fall under the automobile exception because the vehicle was not mobile at the time the officer performed a warrantless search.  Plaintiff also argues that probable cause did not arise from Plaintiff's statements regarding his drug use and possession because Plaintiff's statements (and mental state) could not be trusted because of his grave injuries and resulting pain.  Finally, Plaintiff

13

argues that "the alleged statement by Officer Grajewski is insufficient to establish probable cause that there was contraband inside the vehicle." (Plf.'s Resp. at 12).

As set forth *supra*, the law is clear that a vehicle need not be readily "mobile" to qualify for the automobile exception to the Fourth Amendment. *See Smith*, 510 F.3d at 647 (quoting *California v. Carney*, 471 U.S. 386, 391 (1985)). Further, Plaintiff's argument that Officer Grajewski should not have relied upon Plaintiff's statements because of the severity of his injuries is not supported by the record. Officer Grajewski was asked if Plaintiff's answers to his questions were rational and he responded "I don't recall fully. I believe that he was responding to the questions being asked and answering." (Grajewski Dep. 13:24-25). Further, Plaintiff's comments regarding his drug use were in response to the question of whether he had used any narcotics. (*Id*. 25-16; Ambulance Run Sheet at 1). Therefore, Plaintiff's response was rational and coherent.

Finally, Plaintiff's argument that his statements regarding drug use and possession cannot give rise to probable cause fails to acknowledge that probable cause for the search was not based solely on these statements. Plaintiff completely fails to acknowledge that probable cause for the vehicle search was also based on K-9 Xando's alert. (Jacobson Aff. ¶¶ 5-6; Police Report at 3). The Sixth Circuit has categorically held that "[a]n alert by a properly trained and reliable drug-detection dog 'is sufficient to establish probable cause for the presence of a controlled substance.'" *United States v. Stubblefield*, 682 F.3d 502, 507 (6th Cir. 2012) (citing *United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994)). Plaintiff has not challenged the training of Xando or the abilities of Xando's handler.

Therefore, the Court finds that the search of Plaintiff's vehicle was justified where

probable cause existed based not only based on Plaintiff's statements regarding his drug use and possession, but also on the independent alert of the K-9 narcotics dog, Xando.[5]

### 3. Overall Affidavit

Plaintiff argues that because the information discussed *supra* was "unlawfully" obtained, Defendant Boulter should have disclosed this information to the judge who signed the warrant and if he had, the judge would not have issued the warrant.[6] However, this argument fails because Plaintiff cannot show that any of the information in the affidavit was procured in violation of the Constitution or HIPAA.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment and Plaintiff's Claims are dismissed with prejudice.

**SO ORDERED**.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: October 31, 2013

---

[5] Because the search is proper under the automobile exception to the Fourth Amendment the Court declines to examine whether the search may also be proper under the search incident to arrest or the inventory exceptions to the Fourth Amendment.

[6] Additionally, Plaintiff appears to argue that Defendant Boulter should not have relied upon Officer Jacobson's "allegation of tips" because they were unsubstantiated. The Court finds that this argument is neither developed nor supported in the briefing and was not discussed at oral argument and declines to address it. Plaintiff asserts it summarily in a bullet point with no supporting argument or facts. There is nothing in the record indicating that Officer Jacobson's tips were unsubstantiated or anonymous.

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 31, 2013.

                                              s/Deborah Tofil
                                              Case Manager